1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER CHACON, | )   1:10-cv-2416 AWI GSA |
| | ) |
| | ) |
| Plaintiff, | )   FINDINGS AND RECOMMENDATIONS |
| | )   REGARDING DISMISSAL OF CERTAIN |
| v. | )   CLAIMS WITHOUT LEAVE TO AMEND |
| | )   AND GRANTING PLAINTIFF LEAVE TO |
| HOUSING AUTHORITY OF THE | )   AMEND OTHER CLAIMS |
| COUNTY OF MERCED and DOES, | ) |
| 1 through 10, inclusive, | ) |
| | )   (Doc. 1) |
| Defendants. | ) |
| | ) |

Plaintiff Javier Chacon ("Plaintiff"), appearing pro se and proceeding in forma pauperis, filed the instant complaint on December 30, 2010. (Doc. 1).  He names the Housing Authority of the County of Merced as a Defendant ("Defendant").  Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq ("Title VII"), as well as state law causes of action for wrongful termination/constructive discharge and intentional infliction of emotional distress.

## DISCUSSION

A.    Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2), the court must conduct an initial review of the complaint for sufficiency to state a claim.  The court must dismiss a complaint or portion thereof if the court determines that the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune

1  from such relief.  28 U.S.C. § 1915(e)(2).  If the court determines that the complaint fails to state

2  a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be

3  cured by amendment.

4        A complaint must contain "a short and plain statement of the claim showing that the

5  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

6  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

7  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing

8  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiff

9  must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

10  face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations

11  are accepted as true, legal conclusions are not.  Id. at 1949.

12        A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

13  which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

14  support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding,

15  467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.

16  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a

17  complaint under this standard, the Court must accept as true the allegations of the complaint in

18  question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), construe the

19  pro se pleadings liberally in the light most favorable to the plaintiff, Resnick v. Hayes, 213 F.3d

20  443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, Jenkins v. McKeithen,

21  395 U.S. 411, 421 (1969).

22  B.    Plaintiff's Allegations

23        Plaintiff is a forty-seven-year-old Hispanic male who was employed by the Housing

24  Authority of the County of Merced as a Maintenance Supervisor for more than six years.  He

25  alleges that throughout his employment as a Maintenance Supervisor, he requested his own

26  computer at his primary job site located in Dos Palos, California.  He contends that despite

27  numerous requests, he was never given exclusive access to a computer, laptop, desktop, or

28  mainframe which were essential to performing his job duties. Instead, he had to share a computer

with his supervisor, Debbie Nichols, who needed the computer to complete her own work and, therefore, at times, he was unable to have access to the computer.  When the computer was not available, Plaintiff had to drive twenty-one miles to Los Banos, California to gain computer access so that he could perform his job duties.  Moreover, Program Director, Gina Thexton, and Executive Director, Rennise Ferrario, insisted that e-mails be sent to Plaintiff that could only be accessed at the Los Banos site.

Although Plaintiff was deprived of computer access, Plaintiff contends two other Maintenance Supervisors, Mike Shillings and Robert Algiers, were given exclusive access to a computer at their main offices.  Both Shillings and Algiers were Caucasian males.  Mike Shillings had been employed as a Maintenance Foreman in Merced, California for approximately one and a half years.  Robert Algiers was employed in Livingston, California.[1]

Plaintiff makes several allegations of discrimination in the complaint.  First, he contends that his employment was terminated in retaliation for participating in an investigation against Defendant conducted by the Board of Commissioners of the Housing Authority of the County of Merced.  Plaintiff also alleges that Program Director, Gina Thexton, made unwanted sexual advances toward Plaintiff.  Finally, Plaintiff contends that "discrimination based on religious fervor or lack thereof was committed against [him] in the form of a Men's Breakfast meeting held during work hours." (Doc. 1 at pg. 5.)

Plaintiff was put on an unpaid leave of absence on or about March 26, 2010.  He filed a claim with the Equal Employment Opportunity Commission on or about July 22, 2010, and received a right to sue letter on September 30, 2010.  (Doc. 1 at pg. 12.)  Defendant has informed Plaintiff that his prior position as Maintenance Foreman cannot be guaranteed and future employment in other positions may be unavailable.

As a result of the above, Plaintiff contends he has suffered a continual loss of earnings and emotional distress.  He alleges violations of Title VII, wrongful termination/constructive discharge and intentional infliction of emotional distress as causes of action.  He seeks lost

[1] The complaint does not indicate how long Robert Algiers was employed as a Maintenance Foreman.

3

1    wages, attorney's fees, court costs, and punitive damages.

2    C.    Analysis

3          A review of Plaintiff's complaint reveals that while he may be able to state a cognizable

4    claim, the complaint is deficient and needs to be amended for the reasons set forth below.  In

5    summary, the causes of action must be more clearly organized and the facts in support of the

6    causes of action must be clearly articulated. Moreover, the common law state law claims are

7    barred. However, Plaintiff will be given an opportunity to amend his complaint.  In addition to

8    the following legal standards, Plaintiff is advised that his complaint must contain all necessary

9    allegations for each cause of action.

10                    1.    *Applicable Legal Standards*

11         In the paragraphs that follow, the court will provide Plaintiff with the legal standards that

12   may apply to his claims.  Plaintiff should carefully review the standards and amend only those

13   claims that he believes, in good faith, are cognizable.

14                  **a.    Title VII Claims**

15   *Disparate Treatment*

16         Under Title VII of the Civil Rights Act, it is unlawful for an employer to "discriminate

17   against any individual with respect to his compensation, terms, conditions, or privilege of

18   employment because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  To establish a

19   prima facie case of disparate treatment under Title VII Plaintiff must show that: "(1) he is a

20   member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse

21   employment action; and (4) similarly situated individuals outside his protected class were treated

22   more favorably, or other circumstances surrounding the adverse employment action give rise to

23   an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir.

24   2004); see also Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1195-96 (9th

25   Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

26         Adverse employment action is broadly defined.  Ray v. Henderson, 217 F.3d 1234, 1241

27   (9th Cir. 2000); see also Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000)

28   (collecting cases).  Adverse employment action exists where an employer's action negatively

1   affects an employee's compensation. See, Little v. Windermere Relocation, Inc., 301 F.3d 958,

2   970 (9th Cir. 2002) (holding that a reduction in base monthly pay was an adverse employment

3   action even though with commission and bonuses it might have equaled the same net pay); cf.

4   University of Hawaii Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1105-06 (9th Cir. 1999)

5   (holding that receiving pay even a couple of days late can seriously affect an employee's financial

6   situation and constitutes substantial impairment under the Contracts Clause). Plaintiff should

7   keep in mind that Title VII does not provide a cause of action for damages against supervisors or

8   fellow employees. Holly D. v. California Institute of Technology, 339 F.3d 1158 (9th Cir. 2003).

9       The crux of Plaintiff's claim is that he was not provided with the same access to

10  computers as other white males with lower seniority in the agency. He implies that as a result, he

11  was unable to complete his work and was terminated.[2] However, the facts are not clear from the

12  complaint. Plaintiff needs to more clearly specify what occurred and how the disparate

13  conditions affected his work performance and the eventual change in his employment status.

14  Additionally, although Plaintiff states that Title VII is the basis of this Court's jurisdiction and he

15  makes a reference to this statute in the pleading, the only causes of action listed are for

16  intentional infliction of emotional distress and wrongful termination/constructive discharge.

17  Plaintiff must allege facts and state a separate cause of action under Title VII in order to pursue

18  this claim.

19      *Religious Claims*

20      Additionally, Plaintiff makes reference to the fact that he suffered religious

21  discrimination because he did not participate in a Men's Breakfast meeting held during work

22  hours. Plaintiff needs to explain the circumstances of this meeting, whether he was excluded

23  from this activity, how it relates to his religion, and how this affected his work conditions.

24  Plaintiff is advised that the protected class showing that is required in a traditional race or sex

25  discrimination claim may not apply to a reverse discrimination claim because it is the religious

26  beliefs of the employer, and the fact that the employee does share them, that constitutes the basis

27

28      [2] It is not clear from the complaint whether Plaintiff was actually terminated or just put on administrative leave.

1  of religious discrimination.  Noyes v. Kelley Services, 488 F. 3d 1163, 1168-1169 (9th Cir.

2  2007).

3       *Hostile Work Environment*

4       Plaintiff alleges that he experienced unwanted sexual advances from his supervisor.  In

5  order to establish a prima facie case for a hostile work environment based on sexual harassment,

6  Plaintiff must establish that (1) Plaintiff was subjected to verbal or physical conduct of a sexual

7  nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive

8  to alter the conditions of employment and create an abusive working environment.  Porter v.

9  California Department of Corrections, 419 F. 3d 885, 894 (9th Cir. 2005).

10      Although Plaintiff alleges that there was some appearance of sexual harassment on the

11 part of his supervisor, he does not explain the conduct with specificity.  Plaintiff is advised that

12 mere legal conclusions, without more, do not suffice.  As previously noted, "[t]hreadbare recitals

13 of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

14 Ashcroft v. Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).  Plaintiff must set forth

15 "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal,

16 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as

17 true, legal conclusion are not.  Id. at 1949.  In this instance, Plaintiff has done nothing more than

18 make a conclusory statement that he was sexually harassed.  This is insufficient.  Plaintiff must

19 provide more facts in order to state a claim for this cause of action.

20      *Retaliation*

21      Title VII prohibits an employer from discriminating against an employee for opposing an

22 unlawful employment practice, such as filing a complaint alleging sexual orientation harassment

23 and hostile work environment.  To establish a prima facie case, the employee must show that he

24 engaged in a protected activity, he was subsequently subjected to an adverse employment action,

25 and that a causal link exists between the two. Dawson v. Entek Intern, 630 F. 3d 928, 926 (9th

26 Cir. 2011) (citing Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988)).  The causal link can be

27 inferred from circumstantial evidence such as the employer's knowledge of the protected

28

1  activities and the proximity in time between the protected activity and the adverse action.  Id.  If

2  a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant

3  employer to offer evidence that the challenged action was taken for legitimate, non-

4  discriminatory reasons.  See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir.

5  1996).  If the employer provides a legitimate explanation for the challenged decision, the plaintiff

6  must show that the defendant's explanation is merely a pretext for impermissible discrimination.

7  See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).[3]

8      It appears that Plaintiff's retaliation claim relates more to Defendant's conduct in

9  response to Plaintiff participation in an investigation rather than based on Plaintiff's membership

10  in a protected class.  Accordingly, this standard may not apply to Plaintiff's case.  However,

11  California Labor Code  § 1102.5 states that an employer cannot retaliate against an employee "for

12  disclosing information to a government or law enforcement agency, where the employee has

13  reasonable cause to believe that the information discloses a violation of state or federal statute [or

14  regulation]. Cal. Labor Code § 1102.5.  Plaintiff is advised that in Campbell v. Regents of the

15  Univ. of Cal., 35 Cal.4th at 317, 329 (2005), the California Supreme Court held that under §

16  1102.5, a plaintiff is required to exhaust all administrative remedies before proceeding to suit.

17  Thus, in order to state a claim under this provision of law, Plaintiff must establish that he has

18  exhausted his administrative remedies pursuant to the California Tort Claims Act which is

19  described in more detail below. He must also establish that he has exhausted the administrative

20  remedies with the Labor Commission pursuant to California Labor Code  § 98.7 which requires

21  that he file a complaint with the Labor Commission within six months after the occurrence of the

23  [3]  Similarly, under California's anti-retaliation provision it is unlawful for "any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov.Code 12940(h). "The law protects an employee from discrimination 'because' the employee has opposed what he reasonably believes to be an unlawful practice." La Strape v. E & J Gallo Winery, 2008 WL 2509203 (E.D.Cal., Jun.23, 2008); Manatt v. Bank of America, 339 F.3d 792 (9th Cir.2003) (construing Title VII). To state a claim under this provision, plaintiff must establish (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two. Manatt v. Bank of America, 339 F. 3d at 800.

violation. Cal. Labor Code  § 98.7.  Bowman v. Yolo County, 2008 WL 3154691, *1-2 (E.D.Cal.2008) (exhaustion of administrative remedies pursuant to section 98.7 is required under section 1102.5 in addition the California Tort Claims Act); see also Hall v. Apartment Inv. and Mgmt. Co., 2008 WL 5396361 (N.D.Cal.2008) (exhaustion of the administrative remedies prescribed in section 98.7 applies to section 1102.5).

### b.   State Common Law Claims

Plaintiff has alleged two state law claims : intentional infliction of emotional distress and wrongful termination/constructive discharge.  Although the nature of the wrongful termination claim is unclear, Plaintiff appears to be attempting to plead a common law tort claim for wrongful termination of employment in violation of public policy.  See, Williams v. Housing Authority of the City of Los Angeles, 121 Cal.App.4th 708, 713 n. 2 (2004) (stating that public policy violations premised on wrongful termination, wrongful constructive termination, and wrongful demotion are all common law tort causes of action); See also, Rojo v. Kliger 523 Cal. 3d 65, 88-89 (1992) (wrongful termination in violation of public policy is nonstatutory common law tort claim).  However, Defendants are immune from suit for these claims.

As a preliminary matter, Plaintiff is advised that The California Tort Claims Act, Cal. Gov't Code §§ 900 et seq. ("CTCA") requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part. See Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995) (citing Snipes v. City of Bakersfield, 145 Cal.App.3d 861, 193 Cal.Rptr. 760 (1983)). Under California law, failure to allege facts either demonstrating or excusing compliance with the CTCA subjects a complaint to dismissal for failure to state a claim. See, California v. Superior Ct. (Bodde), 32 Cal.4th 1234, 1245, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004).  Therefore, prior to alleging a state law cause of action for intentional infliction of emotional distress, wrongful termination in violation of public policy, or retaliation pursuant to California Labor Code § 1102.5, Plaintiff must have complied with the California Tort Claims Act and it appears that he has not done so.

Furthermore, California Government Code §  815(a) provides that a "public entity is not

liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute." "Public Entities" include counties, public agencies , and any other public entity or a public employee or any other political subdivision or public corporation of the State.  Cal. Gov't Code § 811.2.

Certain statutes provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities, but the Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." Brown v. Poway Unified School Dist., 4 Cal.4th 820, 829 (1993); see Becerra v. County of Santa Cruz, 68 Cal.App.4th 1450, 1457 (1998) ("in absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable"); Michael J. v. Los Angeles County Dept. of Adoptions, 201 Cal.App.3d 859, 866 (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished.")

A court first determines whether a statute "imposes direct liability" on a defendant public entity.  Munoz v. City of Union City, 120 Cal.App.4th 1077, 1111 (2004).  "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of [California] Civil Code section 1714."  Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175, 1183 (2003).  "In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable. . . . [T]he practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts."  Thompson v. City of Lake Elsinore, 18 Cal.App.4th 49, 62 (1993).

Therefore, as a matter of law, Plaintiff is unable to pursue the state common law claims for wrongful termination in violation of public policy and intentional infliction of emotional distress claims against Defendant.  Accordingly, this Court will recommend that these claims be

dismissed without leave to amend.

### c. California Fair Employment and Housing Act

Although Plaintiff has not raised claims under the Fair Employment and Housing Act ("FEHA") per se, he is advised that under California statutory law, an employer may not discriminate against an individual seeking, obtaining, or holding employment based on that employee's race.  Cal. Gov't Code  § 12920. The FEHA makes it an unlawful employment practice for an employer to discriminate against, harass, or discharge an employee because of race, national origin, or sex. Cal. Gov.Code, § 12940, subds.(a), (j).)  Claims of employment discrimination under the FEHA are analyzed under the same framework as those brought under Title VII.  Brooks v. City of San Mateo, 229 F. 3d 917 (9th Cir. 2000); Beyda v. City of Los Angeles, 65 Cal. App. 4th 511, 517 (1998).

However, an employee who experiences such an unlawful practice must file a complaint with the Department of Fair Employment and Housing ("DFEH"); the complaint must be filed within one year after the date on which the unlawful practice occurred. (Gov.Code, § 12960, subds.(b), (d).) "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain a notice of right to sue  from the [DFEH]  in order to be entitled to file a civil action in court based on violations of the FEHA. The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA" Romano v. Rockwell Internat., Inc. 14 Cal.4th 479, 492 (1996).  Therefore, Plaintiff must establish that he exhausted the appropriate state administrative remedies in order to properly state a claim under this provision of California law.

### RECOMMENDATIONS

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's claims for intentional infliction of emotional distress and wrongful termination/constructive discharge be DISMISSED WITHOUT LEAVE TO AMEND.  Plaintiff's shall be given leave to amend the complaint to properly allege his claims under Title VII of the Civil Rights Act and other California law claims if appropriate.

1    Plaintiff is advised that when filing an amended complaint he should consider the

2    instructions contained in this order.  The amended complaint shall indicate that the required

3    administrative remedies were met for each cause of action.  Plaintiff SHALL file an amended

4    complaint within thirty (30) days of the date of service of this order.  Plaintiff is also advised

5    that, if he fails to timely file a First Amended Complaint, the Court will recommend that this

6    action be dismissed with prejudice on the grounds set forth above and for failure to diligently

7    prosecute this action.

8    The Findings and Recommendations regarding dismissal of Plaintiff's common law state

9    claims of intentional infliction of emotional distress and wrongful termination/constructive

10   discharge will be submitted to the Honorable Anthony W. Ishii, pursuant to the provisions of

11   Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and

12   Recommendations, Plaintiff may file written objections with the Court.  The document should be

13   captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is

14   advised that failure to file objections within the specified time may waive the right to appeal the

15   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17

18

19

20

21

22

23   IT IS SO ORDERED.

24   Dated:   **June 29, 2011**              **/s/ Gary S. Austin**

25                                   UNITED STATES MAGISTRATE JUDGE

26

27

28

11